J. Rogers Flannery, Jr. v. Commissioner.
Flannery v. Commissioner
Docket No. 6645.
United States Tax Court
1946 Tax Ct. Memo LEXIS 199; 5 T.C.M. (CCH) 332; T.C.M. (RIA) 46103; April 30, 1946
*199 In his income tax return for 1940 the petitioner claimed the deduction from gross income of $5,034.36 owed to him by the Pittsburgh Dry Stencil Co. Held, that the debt became worthless in 1940 and that the amount is a deduction from gross income. In years prior to 1941 the petitioner spent $17,769.45 in the development of an invention of an "electel" machine. Litigation starting in 1938 was terminated in 1941. Held, that in 1941 the petitioner sustained a deductible loss of his investment in the "electel invention" in the amount of $17,769.45. Norman D. Keller, Esq., and A. G. Wallerstedt, C.P.A., 747 Union Trust Bldg., Pittsburgh, *200 Pa., for the petitioner. Karl W. Windhorst, Esq., for the respondent. SMITH
Memorandum Findings of Fact and Opinion SMITH, Judge: This proceeding is for the redetermination of deficiencies in income tax for 1940 and 1941 of $697.68 and $61.89, respectively. The petitioner alleges as follows: (1) In determining the deficiency for the calendar year 1940 the Commissioner erroneously disallowed as a deduction the amount of $5,034.36 theretofore advanced by the petitioner to or for the account of the Pittsburgh Dry Stencil Co. which became worthless and was deductible as a bad debt in the year 1940. (2) In determining the amount of the petitioner's income for the calendar year 1941 the petitioner is entitled to deduct as a business loss the sum of $17,769.45 representing the amount of his investment in a so-called "electel invention," the full amount of which represented a loss to the petitioner in 1941 as a result of an adverse court decision. (3) In the alternative, if the investment in the "electel invention" was not a loss in 1941, such loss occurred and is deductible in the year 1940 and the excess of the amount of the loss over the amount of the petitioner's *201 income for the year 1940 is deductible as a net operating loss deduction for the year 1941. Findings of Fact 1. The petitioner, J. Rogers Flannery, Jr., is an individual residing in Pittsburgh, Pa. His income tax returns for the calendar years 1940 and 1941 were filed with the collector of internal revenue for the twenty-third district of Pennsylvania, at Pittsburgh. 2. In 1935 the petitioner began to engage in business as a manufacturer's agent employing an organization which sold various manufacturing products in a territory extending from Illinois to the east coast of the United States. He has continued to operate this business to the present time. 3. On March 16, 1936, the petitioner acquired from his mother, at a cost of $4,500, the entire right, title and interest in an invention for testing and detecting fractures in metallic objects, known as the "electel invention," patent for which had been applied for by the inventor, Grover B. Greenslade. The rights in this invention had been acquired by the petitioner's mother from the inventor on July 12, 1935. The purpose of the electrical testing machine represented by the invention was to test by an electrical device the resistance *202 and strength of large metallic objects such as crank shafts, pins and axles for locomotives, airplane propellers, gun barrels and similar objects. 4. The petitioner's purpose in acquiring the rights to the electel invention was to sell the testing service to railroads, aircraft companies and similar businesses. Pursuant to this purpose he employed the inventor Greenslade and several assistants from time to time from the date of his acquisition of the invention until the summer of 1938. The work of these employees consisted in improving the electel machines, testing their operation and conducting tests at various railroad shops and aircraft plants for the purpose of demonstrating the possibilities of the machines as a testing service. 5. Although the electel invention was demonstrated to be successful, the petitioner suspended his activities in connection with it in the summer of 1938 on the advice of his attorney, because of the pendency of a suit in equity in the United States District Court for the Western District of Pennsylvania, in which Flannery Bolt Co., a Delaware corporation, was the plaintiff and the petitioner herein, Greenslade and others were the defendants. 6. On *203 October 14, 1938, the District Court issued its decree in this suit in which it adjudged inter alia that the electel invention made or developed by Greenslade was in equity the property of the plaintiff, and ordered the defendants or any of them who claimed to have any interest in the invention or in any patent or patent applications therefor to make full and complete disclosure thereof to the plaintiff and to make, execute, and deliver to the plaintiff such assignments, transfers, conveyances, releases, powers, acknowledgments, and consents as should be necessary to vest in the plaintiff the entire right, title, and interest in the invention and any patent or patent applications therefor, subject to the reservation that Greenslade should be entitled to one percent of the net proceeds derived through or from the invention. The defendants thereupon appealed to the Circuit Court of Appeals for the Third Circuit, which court on August 11, 1939, handed down an opinion and issued its mandate affirming the decree of the District Court. Flannery v. Flannery Bolt Co., 108 Fed. (2d) 531. The defendants thereafter filed a petition for writ of certiorari in the Supreme Court of the *204 United States, which was denied on March 11, 1940. Flannery, et al. v. Flannery Bolt Co., 309 U.S. 671. 7. Subsequent to the denial of the petition for writ of certiorari the petitioner herein filed a petition with the District Court for construction and modification of its decree, taking the position that the decree did not cover the so-called "No. 3 Electel" machine, which was an improvement upon the No. 1 and No. 2 electel machine. On July 18, 1940, the District Court issued its order wherein it denied the petition of J. Rogers Flannery, Jr., held that Flannery Bolt Co. was entitled to the ownership of the No. 3 Electel and of all inventions and improvements contained therein invented by Greenslade, and ordered the petitioner to deliver over to the plaintiff any and all drawings, drafts of patent applications, and data connected therewith. The petitioner thereafter took an appeal from the said order to the Circuit Court of Appeals for the Third Circuit, which court on April 30, 1941, handed down an opinion and issued its mandate affirming the order of the District Court. Flannery Bolt Co. v. Flannery, 119 Fed. (2d) 601. 8. The first two electel machines *205 were not sufficiently sensitive to fluctuations in large metallic objects and the No. 3 Electel represented an improvement accomplished by redesigning the equipment used in the first two machines in order to attain the desired sensitivity. 9. After his acquisition of the rights in the electel invention the petitioner expended substantial amounts during the period from March, 1936, to October, 1938, in developing and demonstrating the invention. Such expenditures in the aggregate amount of $13,269.45 consisted of payments for legal expenses, for salaries and traveling expenses of the petitioner's employees and for materials and construction costs. 10. In his income tax returns for the years 1936 and 1937 the petitioner deducted as expenses the salaries paid in those years to Greenslade and an assistant named Pyle, and in his return for the year 1938 deducted as expenses the salaries paid in that year to Pyle and an assistant named Douthitt. Upon examination of the petitioner's returns for the years 1937 and 1938, the internal revenue agent in charge, by his 30-day letter, proposed to disallow deductions as expenses of the salaries paid to Greenslade, Pyle and Douthitt in such years, *206 the ground for such disallowance being stated as follows: These salaries were incurred in connection with the development of a certain patent or patents covering an electel device for testing steel and it is apparent that such items would constitute capital expenditures. As the result of a suit brought in the U.S. District Court for Western Pennsylvania the taxpayer was obliged to turn the "electel patents" over to the Flannery Bolt Company. However, a final decision in this case was not handed down until 1940 and it is the opinion of the examiner that the above items are not proper deductions for the years under investigation. The amounts of salaries disallowed for 1937 and 1938 were $4,383.00 and $1,552.50, respectively. 11. The petitioner agreed to the adjustments proposed by the internal revenue agent in charge and paid the amount of additional taxes as shown in the letter, together with interest thereon. 12. The petitioner for a number of years after its organization in 1934 was the vice president, a stockholder, and a director of Pittsburgh Dry Stencil Co., a corporation which was originally engaged in the business of manufacturing dry stencils and which also owned *207 certain patents for a magnetic stay bolt tester designed to detect fractures in stay bolts used in locomotives and railroad equipment. The petitioner first had charge of the operation of the corporation's plant and eventually had charge of the general conduct of the business. 13. Pittsburgh Dry Stencil Co. originally manufactured dry stencils in leased quarters at Seventeenth and Pike Streets, Pittsburgh, Pa., where it owned and used cutting machinery, drying and coating machinery and tanks for making the chemical solution. Manufacturing operations were conducted at this address until some time in 1935, when the lessor of the building foreclosed on and sold all of the company's equipment, machinery and materials to satisfy unpaid rentals. Thereafter the company moved to the Flannery Building, Pittsburgh, Pa., where it no longer manufactured, but bought and assembled stencils, and sold them under its brand name. 14. Pittsburgh Dry Stencil Co. continued to operate until the fall of 1938 or the early part of 1939, when it ceased operations due to lack of funds and because of the decree of the United States District Court for the Western District of Pennsylvania in the suit of Flannery *208 Bolt Co. previously mentioned. That decree provided, inter alia, that all of the capital stock of the Pittsburgh Dry Stencil Co. and all inventions relating to electro-magnetic or magnetic testing devices made or developed by Greenslade since September 11, 1932, and during the term of his employment by Pittsburgh Dry Stencil Co. were in equity the property of the plaintiff, and directed the defendants in the suit to assign this stock and their interest in the invention and in any patent or patent applications therefor to the plaintiff. 15. When Pittsburgh Dry Stencil Co. ceased its operations as a result of the decree of the District Court, it had no assets except the stay bolt tester. 16. During the years 1936 and 1937 the petitioner made advances to or for Pittsburgh Dry Stencil Co. for salaries and for materials furnished to the company. Such checks and checkbook stubs as petitioner was able to locate and produce at the hearing, representing advances to or for the account of the company, amounted in the aggregate to the sum of $4,391.05. No part of this sum has been repaid to the petitioner. 17. The ledger account of Pittsburgh Dry Stencil Co. as of January 1, 1938, shows *209 a balance due to the petitioner in the amount of $11,334.36. Of this amount the sum of $6,300 represented unpaid salary of the petitioner and the balance, or $5,034.36, represented advances by the petitioner. 18. The petitioner filed an original and an amended income tax return for the calendar year 1940. On his original return, which reported a net loss of $6,603.18, he deducted the sum of $9,362.44 as a bad debt. representing loans theretofore made to Pittsburgh Dry Stencil Co., and the sum of $13,269.45 as a loss of the amount expended on development of the electel device. On his amended return, which reported a net loss of $10,888.36, he deducted as a business loss the amount of $22,631.89, representing the sum of the Pittsburgh Dry Stencil Co. advances and the development expenses of the electel device. In his notice of deficiency the Commissioner determined that the petitioner derived net income for 1940 of $11,743.53, rather than a net loss of $10,888.36, as shown on the amended return, by disallowing in full the aforesaid deduction of $22,631.89. 19. The petitioner also filed an original and an amended income tax return for the calendar year 1941. On his original return, *210 which reported a net loss of $1,511.49, he took no deduction on account of a net operating loss carry-over. On his amended return, which reported a net loss of $8,039.50, he deducted the amount of $10,871.67 as a net operating loss carry-over from the year 1940. In his notice of deficiency the Commissioner determined that the petitioner derived net income for 1941 of $2,832.17, rather than a net loss of $8,039.50, as shown on the amended return, by disallowing in full the said net operating loss carry-over. Opinion The first question presented is whether the petitioner is entitled to deduct from his gross income of 1940 the debt owed to him by the Pittsburgh Dry Stencil Co. in the amount of $5,034.36. The petitioner was a creditor of the company in the amount claimed. Section 23 of the Internal Revenue Code, as amended by section 124 of the Revenue Act of 1942, provides for the deduction from gross income in subdivision (k) of all "Debts which become worthless within the taxable year." The amendment was made retroactive for the calendar year 1940. See Central National Bank of Richmond, 1 T.C. 244. The petitioner claims that the debt in question *211 became worthless in 1940 upon the denial of the writ of certiorari in Flannery v. Flannery Bolt Co., 108 Fed. (2d) 531, on March 11, 1940. Flannery, et al. v. Flannery Bolt Co., 309 U.S. 671. The evidence shows that the Pittsburgh Dry Stencil Co. ceased operations in the latter part of 1938, or early in 1939, and that at that time it had no assets of mentionable value except patents relating to a "stay bolt tester." The petitioner contends that this group of patents had a commercial value and that if the litigation which was terminated in 1940 had been decided in his favor he would have spent additional money in the development of the patents. He testified that they had commercial value. It is the respondent's position that the evidence does not show that the patents in question had a commercial value or, if so, that it does not show that the petitioner would ever have been able to recover any part of his claim against the Pittsburgh Dry Stencil Co. We are of the opinion that the action of the Supreme Court in denying the writ of certiorari in 1940 was the identifiable event which proved that the claim became worthless in 1940. The contention of the *212 petitioner upon this point is sustained. The second question for decision is the year in which the petitioner sustained a loss on his investment in the so-called "electel invention," and also the amount of the loss. By the decision of the District Court entered in 1938 Flannery Bolt Co. was held to be the equitable owner of all rights to the electel invention. That case was appealed to the Circuit Court of Appeals for the Third Circuit, which affirmed the decision of the District Court in 1939. A petition for writ of certiorari to the Supreme Court of the United States was denied in 1940. Thereafter the petitioner filed a petition in the District Court for a construction of the 1938 decree of the District Court. The Flannery Bolt Co. in connection with that proceeding obtained a rule to show cause why the petitioner should not be adjudged in contempt for refusal to execute a certain assignment. From an order denying a petition for construction of the decree, directing the execution and delivery of the assignment and holding in abeyance the contempt proceeding, the petitioner appealed to the Circuit Court of Appeals for the Third Circuit, which court affirmed the decree of the District *213 Court on April 30, 1941. In his petition to the District Court requesting a clarification of its judgment entered in 1938 the petitioner requested the court to determine whether its decree extended to a so-called electel machine No. 3, which was some improvement over the first two machines that had been constructed embodying the ideas of the invention. The Circuit Court of Appeals in its opinion affirming the decree of the District Court stated that the decree rendered by it in 1938 was unambiguous and that there was no ground for contending that it was not. The question as to the year in which the loss was sustained is purely a question of fact. It has been held in numerous cases that a loss occasioned by an adverse court decision from which an appeal is taken is not deductible until the case is finally disposed of on appeal. Malleable Iron Range Co. v. United States, 62 Ct. Cls. 425; 2 Cumulative Bulletin, T.D. 3909 (1926), p. 166; Lehigh & Hudson River Ry. Co. v. Commissioner (C.C.A., 2nd Cir.), 38 Fed. (2d) 1015; certiorari denied, 281 U.S. 784; Farmers National Bank of Rome, N. Y., Extr., 6 B.T.A. 1036. We can *214 not doubt that the filing of a petition in the District Court in 1940 for a clarification of its judgment handed down in 1938 was made in good faith; likewise, the appeal to the Circuit Court of Appeals for the Third Circuit was made in good faith. It was not until the year 1941 that it was finally determined that the petitioner was not entitled to any interest in the No. 3 electel machine, which apparently was an improvement over electel machines Nos. 1 and 2 and actually superseded those machines. The litigation was ended in 1941. The loss of the petitioner's investment in the electel invention was sustained in that year. A further question is raised as to the amount of the deductible loss. The proof shows that the petitioner initially paid $4,500 in acquiring from his mother certain rights in the invention. He thereafter expended $13,269.45 in the development of it. So far as the evidence shows the petitioner treated the payments of $13,269.45 as expenses of his business of the years in which the payments were made. He did not so treat the initial expenditure of $4,500. Upon an audit of the petitioner's income tax returns for 1937 and 1938 the respondent disallowed the deduction *215 of $4,383 and $1,552.50 for the two years, respectively, as ordinary and necessary expenses of carrying on the petitioner's business as a manufacturer's agent. The respondent determined that these expenditures represented capital outlays and not ordinary and necessary expenses. The petitioner acquiesced in that determination and paid deficiencies in income tax for those years based upon such disallowances. So far as the record shows the balance of the $13,269.45 expended by the petitioner in the development of the invention was claimed by the petitioner as deductions from gross income in years prior to 1940 and the amounts claimed as such deductions were not disallowed. The amount of the deductible loss must be adjusted in accordance with section 3801 of the Internal Revenue Code. Since we have held that the petitioner's loss in the development of the electel invention is deductible in the year 1941, it is not necessary to pass upon the alternative contention made by the petitioner. Decision will be entered under Rule 50.